# Order

**Michigan Supreme Court**
**Lansing, Michigan**

March 7, 2008

132949

RANDY C. BURRIS,
          Plaintiff-Appellee,

v

ALLSTATE INSURANCE CO.,
          Defendant-Appellant.

_____/

Clifford W. Taylor,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman,
Justices

SC: 132949
COA: 261505
Wayne CC: 02-208320-NF

On January 9, 2008, the Court heard oral argument on the application for leave to appeal the September 21, 2006 judgment of the Court of Appeals. On order of the Court, the application is again considered. MCR 7.302(G)(1). In lieu of granting leave to appeal, we REVERSE the judgment of the Court of Appeals and REINSTATE the Wayne Circuit Court's September 10, 2004 Order Granting Judgment Notwithstanding the Verdict in Part and the February 23, 2005 Order for Final Judgment and for Sanctions, because the plaintiff did not present sufficient evidence at trial that he incurred attendant care expenses. The evidence failed to establish that the attendant care providers expected compensation for their services. Therefore, the evidence failed to establish that the plaintiff "incurred" attendant care expenses. *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 484 (2003).

CORRIGAN, J., concurs and states as follows:

I concur with the order reversing the judgment of the Court of Appeals and reinstating the trial court's order partially granting judgment notwithstanding the verdict (JNOV) and the order for final judgment and sanctions. I write separately to complete the picture plaintiff presented in this record and to respond to the dissents' legal arguments.

## I. Facts and Procedural History

In 1978, plaintiff, who was then six years old, sustained severe and permanent injuries when he was struck by a drunken driver. After the accident, plaintiff underwent extensive medical treatment, including multiple surgeries, all of which defendant covered

under its no-fault policy. Despite plaintiff's physical limitations, he attended college, obtained employment, married, fathered a child, and performed routine activities, including driving. After plaintiff had an unsuccessful surgery in 2000, however, one of plaintiff's three treating physicians prescribed 24-hour attendant care. Defendant paid plaintiff's then-wife, Diane Vermette, for round-the-clock attendant-care services at the rate of $1,428 weekly. Vermette stopped furnishing attendant-care services just one month after plaintiff's surgery. Nevertheless, plaintiff continued to claim attendant-care services Vermette purportedly provided. He went to great lengths to hide his fraud from defendant. He instructed defendant to make the benefit checks payable to Vermette in her maiden name because plaintiff did not want defendant to know that it was paying his spouse to care for him. Plaintiff directed defendant to send the checks to his post office box. Plaintiff then cashed the checks, using Vermette's identification, and deposited the money into his bank account.

Plaintiff abused defendant's trust in other ways. Plaintiff submitted claims for several thousands of dollars for gym equipment and a special bed, neither of which plaintiff had actually purchased. Defendant paid these claims. Plaintiff also stole prescription pads from one of his treating physicians. He forged his name for the purpose of illegally obtaining prescription medication for which defendant paid. Plaintiff also forged a legitimate $50 receipt from a health-care provider to claim $1,200. Because of questions related to the forged receipt and a private investigator's observations during surveillance of plaintiff, defendant notified plaintiff to appear for an examination under oath, as the insurance policy provided. Plaintiff failed to appear for that examination. Defendant suspended the payment of all personal protection insurance benefits because of plaintiff's fraud, his violation of the terms of the insurance policy by failing to appear for the examination under oath, and a letter from one of plaintiff's doctors stating that he did not require 24-hour care.

Plaintiff and Vermette separated in November 2001 and later divorced. Plaintiff moved back to his parents' home. Three people cared for plaintiff while he was living at his parents' home: Richard Burris (plaintiff's father), Ryan Burris (plaintiff's brother), and Christopher Marcott (plaintiff's friend). All three acknowledged that they had no record of the dates and times they allegedly cared for plaintiff and never submitted a claim to defendant for payment of those services. Further, none of them ever asked plaintiff for any payment for their services, and plaintiff never promised them payment. Ryan and Christopher further testified that they did not expect to be paid for their services. Ryan testified that he just wanted to help his brother ("This is my brother, it's not about money"), and Christopher testified that he just wanted to "hang out" with his best friend ("[It's] not a job, he's my friend").

In 2002, plaintiff filed this first-party no-fault action, seeking payment of attendant-care benefits and unpaid medical expenses. Plaintiff sought an award of $156,376 in attendant-care expenses (approximately $8.50 an hour, 24 hours a day for

761 days). The primary issue at the jury trial was whether defendant was obligated to pay for attendant-care services allegedly provided by Richard, Ryan, and Christopher after plaintiff moved back into his parents' home in December 2001. The jury awarded plaintiff $7,610.98 in medical expenses and $78,438 in attendant-care expenses ($26,146 for Richard, $6,536.50 for Ryan, and $45,755.50 for Christopher).[1] The verdict was about half the amount plaintiff sought. The jury thus rejected plaintiff's exaggerated claims.

The trial court thereafter granted defendant's motion for JNOV and vacated the jury's award of attendant-care expenses. The court ruled that plaintiff had failed to provide sufficient evidence that he had incurred such expenses:

> With regard to the attendant care circumstances, I understand that there are some cases that say that there is some leeway with regard to family members. But in this case, they [Richard, Ryan, and Christopher] couldn't say what they did. They couldn't specify the number of hours. They couldn't even manage to say that they expected reimbursement. They went so far as to say they didn't expect to get anything. And with regard to Mr. Marcott, it's all the worse because he's not a family member.
>
> The motion is granted with regard to the attendant care expenses awarded with regard to Richard Burris, Ryan Burris and Christopher Marcott. These didn't come close to being reimbursable. And the verdict is affirmed in all other regards.[2]

The Court of Appeals reversed and reinstated the jury verdict in an unpublished opinion per curiam.

## II. Response to the Dissents

MCL 500.3107(1) provides, in pertinent part:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:

---

[1] The trial court entered a judgment of $133,013.28 in plaintiff's favor. The judgment included the jury verdict of $86,048.98, taxable costs of $8,292.53, case-evaluation sanctions of $27,750, and accrued interest of $10,921.77.

[2] As a result of the trial court's ruling on defendant's motion for JNOV, defendant became the prevailing party and was, therefore, entitled to an award of case-evaluation sanctions. Accordingly, the trial court entered an order awarding defendant a net judgment of $10,000.

(a) Allowable expenses consisting of all reasonable charges *incurred* for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation. [Emphasis added.]

MCL 500.3110(4) provides that "[p]ersonal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss is *incurred*." (Emphasis added.) In *Nasser v Auto Club Ins Ass'n*, 435 Mich 33 (1990), this Court stated the elements of an "allowable expense" under the no-fault act:

> "The statute requires that three factors be met before an item is an 'allowable expense': 1) the charge must be reasonable, 2) the expense must be reasonably necessary, and 3) *the expense must be incurred*. These are the standard requirements for recovery of such expenses under all no-fault plans . . . ." [*Id.* at 50, quoting *Manley v DAIIE*, 425 Mich 140, 169 (1986) (Boyle, J., concurring in part and dissenting in part) (emphasis added).]

The issue in the instant case is whether plaintiff incurred any expenses for attendant care services.

Justice Weaver argues in her dissent that *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476 (2003), is distinguishable because there the plaintiff sought advance payment for future expenses, rather than reimbursement for an expense for a service that had already been provided, as in the instant case. This factual distinction, however, is irrelevant to the *Proudfoot* Court's discussion of the meaning of the term "incur." In *Proudfoot, supra* at 484, this Court adopted the following dictionary definition of "incur": "[t]o become liable or subject to, [especially] because of one's own actions." "Liable" means "obligated according to law or equity: responsible." *Webster's Ninth New Collegiate Dictionary* (1987). Thus, the definition of "incur" adopted in *Proudfoot* requires a legal or equitable obligation to pay. In *Proudfoot*, this Court elaborated on this definition of "incur" in a footnote:

> An insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services. Should the insured present a contract for products or services rather than a paid bill, the insurance company may, in order to protect itself, make its check payable to the insured and the contractor. [*Proudfoot, supra* at 484 n 4.][3]

---

[3] Justice Weaver adopts sections of the Court of Appeals opinion that do not mention *Proudfoot*. The Court of Appeals analysis was based on Court of Appeals cases decided before *Proudfoot* that are now of questionable validity. *Booth v Auto-Owners Ins Co*, 224 Mich App 724 (1997), and its predecessors are no longer controlling to the extent

Under *Proudfoot*, the term "incur" does not mean that an insured must necessarily enter contracts with the care provider to be entitled to reimbursement for attendant-care expenses ("liable" means "obligated according to law *or equity*"). Nor does it mean that an insured must necessarily present a formal bill establishing that the attendant-care services were provided. It merely means that the insured must have an obligation to pay the attendant-care-service providers for their services. I agree with Justice Kelly that in determining allowable attendant-care expenses, there is no basis to treat family members differently than hired attendant-care-service workers. But to incur an expense for attendant-care services, the insured's family members and friends, just like any other provider, must perform the services with a reasonable expectation of payment.

Plaintiff furnished no evidence that he was liable for any attendant-care expenses. Plaintiff did not pay Richard, Ryan, or Christopher for their services. Further, these three witnesses testified that they did not expect to be paid. Plaintiff does not even argue that he was liable or obligated in any way to pay anything to his family or friend for taking care of him. "Where a plaintiff is unable to show that a particular, reasonable expense has been incurred for a reasonably necessary product or service, there can be no finding of a breach of the insurer's duty to pay that expense, and thus no finding of liability with regard to that expense." *Nasser, supra* at 50. Because plaintiff furnished no evidence that he incurred charges for the assistance of his family members and friend, the trial court properly granted JNOV on the attendant–care-expenses portion of the jury's verdict.[4]

WEAVER, J., dissents and states as follows:

---

that they are inconsistent with *Proudfoot*'s definition of "incur," which requires that the insured be liable for payment.

[4] Justice Weaver presents the following hypothetical example in support of her argument that plaintiff incurred attendant-care expenses: "[*H*]*ad* the providers requested payment, they *would have been* entitled to payment from defendant for their services." (Emphasis added.) In fact, however, the providers did *not* request payment. Therefore, plaintiff was *not* obligated to pay them for their services. Accordingly, defendant had no statutory duty to pay plaintiff for expenses he did not incur.

Additionally, Justice Weaver argues that defendant had an obligation to pay Richard, Ryan, and Christopher for their services. Justice Weaver overlooks that defendant pays personal protection insurance benefits to plaintiff, not his attendant-care providers. Even under Justice Weaver's position, the providers would not be guaranteed to receive any compensation, because the jury's verdict awarded the attendant-care expenses solely to plaintiff. Under Justice Weaver's argument, plaintiff would receive payment for the attendant-care services without any obligation to forward the payment to those who performed the services.

I dissent from the order reversing the judgment of the Court of Appeals and reinstating the Wayne Circuit Court's September 10, 2004, order partially granting judgment notwithstanding the verdict and the February 23, 2005, order for final judgment and for sanctions. I would deny the application for leave to appeal, thereby leaving in place the Court of Appeals judgment reinstating the jury's award of $78,438 for expenses incurred by plaintiff for attendant-care services. A jury found that plaintiff presented sufficient evidence establishing that the plaintiff's physician prescribed 24-hour attendant care for plaintiff and that plaintiff in fact received attendant care from family members and a close family friend. I agree with the Court of Appeals that, as construed under MCL 500.3107(1)(a), plaintiff presented sufficient evidence that he "incurred" expenses for the attendant care services provided to him. Further, I disagree with the majority's application of the holding in *Proudfoot v State Farm Mut Ins Co,* 469 Mich 476 (2003), to this case given the marked factual distinctions between this case and *Proudfoot.*

Plaintiff, Randy Burris, was six years old when he was struck by a car being driven by a drunken driver. Mr. Burris was seriously injured and suffered both orthopedic and internal injuries, including a traumatic brain injury. He was in a coma for several months and then suffered a stroke. His injuries have left him with significant and permanent weakness in his left extremities such that his left arm and leg are nearly nonfunctional. Mr. Burris has had numerous surgeries since the accident, the most recent being a cervical spinal fusion to repair a herniated cervical disc. Mr. Burris was unable to work after the neck surgery and has been permanently disabled since approximately 2000.

As a result of this permanent disability, a physician prescribed 24-hour care for Mr. Burris. Thereafter, pursuant to its duty to pay personal protection insurance (PIP) benefits, MCL 500.3107(1), defendant, Allstate Insurance Company, paid Mr. Burris's wife for 24-hour attendant-care services she provided to Mr. Burris until December 4, 2001.[5]

In November 2001, Mr. Burris and his wife separated, and Mr. Burris moved to his parents' house. For approximately two years, while he lived with his parents, Mr. Burris received attendant-care services from his father and brother, Richard and Ryan Burris, respectively, and from a close family friend, Christopher Marcott. Mr. Burris needed help with dressing, bathing, cooking, laundry, and shopping and general supervisory care to assist him because of his cognitive and physical limitations. While Mr. Burris never received a formal bill for the provision of such services, and while none of the care providers kept track of the exact number of hours of care they provided, nor

---

[5] In December 2001, Allstate suspended PIP payments after it determined that Mr. Burris had altered a receipt from a health-care provider to make it appear that he was entitled to reimbursement in the amount $1,200 instead of $50.

did they expect to be paid, Mr. Burris presented evidence that he both required and received attendant care from these three individuals.[6]

The jury, after hearing testimony from the plaintiff, his physician, and the plaintiff's care providers, evidently concluded that Mr. Burris had incurred allowable expenses entitling him to PIP benefits given that the expenses for attendant care were "reasonable" and were "reasonably necessary," and that such expenses were in fact "incurred."[7] And while there may have been some question as to the appropriateness of the amount Mr. Burris sought, the jury nevertheless awarded him $78,438 in attendant-care expenses, roughly half of the amount he had requested.

MCL 500.3107(1)(a) states that personal protection insurance benefits are payable for "[a]llowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." To be considered an "allowable expense" under § 3107, the expense must be (1) reasonable, (2) reasonably necessary, and (3) incurred.[8] As the Court of Appeals correctly noted, the only issue in dispute was whether the expenses for attendant-care services were "incurred."

Defendant argues that under *Proudfoot*, an expense is not "incurred" until the recipient of such services "become[s] liable or subject to, [especially] because of one's own actions." The pertinent passage from *Proudfoot, supra* at 483-484 states:

> *MCL 500.3110(4)* provides that "[p]ersonal protection insurance benefits payable for accidental bodily injury accrue not when the injury occurs but as the allowable expense, work loss or survivors' loss *is incurred*" (emphasis added).
>
> To "incur" means "[t]o become liable or subject to, [especially] because of one's own actions."[4] A trial court may enter "a declaratory judgment determining that an expense is both necessary and allowable and the amount that will be allowed [, but s]uch a declaration does not oblige a no-fault insurer to pay for an expense until it is actually incurred." At the

---

[6] During closing argument, counsel for the plaintiff noted that Allstate had previously paid the plaintiff's wife $8.50 an hour for attendant-care services and that 761 days had elapsed since the plaintiff's family and friend had provided attendant care. Acting on his counsel's calculations, plaintiff sought $156,376 from Allstate for the attendant-care services provided to him.

[7] See MCL 500.3107(1)(a).

[8] *Owens v Auto Club Ins Ass'n,* 444 Mich 314, 323 (1993); *Davis v Citizens Ins Co of America,* 195 Mich App 323, 326 (1992).

time of the judgment, plaintiff had not yet taken action to become liable for the costs of the proposed home modifications. Because the expenses in question were not yet "incurred," the Court of Appeals erred in ordering defendant to pay the total amount to the trial court. [Citations omitted; emphasis added.]

_____

[4]*Webster's II New College Dictionary* (2001). An insured could be liable for costs by various means, including paying for costs out of pocket or signing a contract for products or services. Should the insured present a contract for products or services rather than a paid bill, the insurance company may, in order to protect itself, make its check payable to the insured and the contractor.

_____

Defendant asserts that because Mr. Burris's family members and Mr. Marcott did not keep track of their hours, submit a written bill for their services, or even expect to be paid at all, no expenses were "incurred" as interpreted by this Court in *Proudfoot.* In making this argument, the defendant relies heavily on the *Webster's II New College Dictionary* (2002) definition of "incur" as a legal obligation, and asserts that under *Proudfoot*, there must be some "legal obligation to pay." Defendant's assertion is that because the care providers in this case did not ask or expect to be paid for their services, there was no "legal obligation to pay" for such services; hence, no expenses were "incurred."

However, when viewed in its proper context, that definition of "incurred" has only a limited application to the facts presented in *Proudfoot* I therefore disagree with the majority's adoption of the defendant's strained interpretation of *Proudfoot*. In *Proudfoot*, the issue was whether an insurer was responsible for *future* home modifications desired by the plaintiff to assist her in accessing her house in a wheelchair. This Court agreed with dissenting Court of Appeals Judge Danhof that an insurer could not be held liable for *future* PIP expenses that had not even been "incurred" yet.

The point of distinction in *Proudfoot* is that the plaintiff was seeking payment in advance for a future expense, not reimbursement for an expense for a service that had already been provided, that is, incurred. The language cited by this Court that is critical to understanding the context in which that case was decided states:

At the time of the judgment, plaintiff had not yet taken action to become liable for the costs of the proposed home modifications. Because the expenses in question were not yet "incurred," the Court of Appeals erred in ordering defendant to pay the total amount to the trial court. [*Proudfoot, supra* at 484.]

In other words, because the plaintiff "had not yet taken action" to install home modifications, the plaintiff was not "liable" for any costs for which he might seek PIP coverage. Had the home modifications already been made, the plaintiff would have been liable for such modifications because they would have been "incurred." Thus, the application of *Proudfoot* to this case is inappropriate as there is no question that Mr. Burris's expenses were "incurred" because the attendant-care services *were not future expenses for which Mr. Burris sought advance payment.* The services in question *had already been provided* to plaintiff.

In her concurrence to the order, Justice Corrigan insists that *Proudfoot* is not distinguishable because Mr. Burris failed to establish that he "incurred" any attendant-care expenses given that there was no expectation of payment from the care providers. However, the fact is that Mr. Burris did present evidence that he received such care, and, had the providers requested payment, they would have been entitled to payment from defendant for their services. Thus, the true "obligation" to pay for attendant-care expenses belongs to defendant. Once the care has been provided, whether or not the care providers were even aware of their right to compensation, the defendant had a statutory duty to pay for attendant-care services.[9]

Moreover, as the Court of Appeals wisely noted, the *Proudfoot* definition of "incur" as to "become liable or subject to, [especially] because of one's own actions," does not equate to a "legal obligation to pay." One can be "subject to" a claim for reimbursement simply on the basis of the provision of a service, even without the preparation or receipt of a formal bill establishing that the service was provided. In that regard, I would affirm the Court of Appeals judgment and adopt that Court's analysis as set forth below:

> [T]his Court has addressed this issue, at least implicitly, on several occasions but particularly instructive is *Booth v Auto-Owners Ins Co*, 224 Mich App 724; 569 NW2d 903 (1997). In *Booth*, the plaintiff was severely injured in an automobile accident and required attendant care from her parents on a continual basis. After the defendant insurer refused to pay the parents for the 24-hour a day attendant care that they provided, the plaintiff

---

[9] MCL 500.3107(1) provides, in pertinent part:

> Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of *all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.* [Emphasis added.]

filed suit. *Id*. at 726. The trial court granted the defendant summary disposition, ruling that the plaintiff failed to submit evidence establishing that she incurred expenses because her parents did not charge her for their services. *Id.* at 726-727. This Court reversed the trial court's ruling, holding that the plaintiff was not required to actually be billed by her family in order to establish that she "incurred" the expense of their attendant care services. *Id.* at 730. Further, relying on *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127, 143; 489 NW2d 137 (1992), this Court held that "whether the plaintiff was entitled to collect the value of the services and the determination of the value are matters properly left for the jury to decide." *Booth, supra*.

Here, plaintiff produced evidence that his family and a friend began providing 24-hour attendant care in December 2001, after plaintiff was divorced and moved back into his parents' house. Plaintiff['s] father, Richard Burris, plaintiff's brother, Ryan Burris, and plaintiff's friend, Christopher Marcott, all testified that plaintiff required, and they provided, significant attendant care services. Dr. Maryann Guyon testified that plaintiff required 24-hour attendant care services as a result of the injuries plaintiff suffered in the 1978 automobile accident and wrote a prescription for the same. Defendant's claims adjuster, Kimberly Dotson, testified she had previously paid attendant care at $ 8.50 per hour. Thus, unlike the factual scenario presented in *Moghis v Citizens Ins Co of America*, 187 Mich App 245, 247; 466 NW2d 290 (1990), plaintiff produced evidence that attendant care services were actually provided to him since December 2001. Plaintiff was not required to actually be billed by his family and friend in order to establish that he "incurred" the expense of their attendant care services; thus, it was for the jury to decide whether he was entitled to collect the value of the services and to make the determination of the value. See *Booth, supra*. Accordingly, the trial court's order granting defendant's motion for [judgment notwithstanding the verdict] on the ground that there was insufficient evidence presented to create an issue for the jury as to whether plaintiff "incurred" the expense is reversed. [*Burris v Allstate Ins Co,* unpublished opinion per curiam of the Court of Appeals, issued September 21, 2006 (Docket No. 261505), p 2.]

Thus, I dissent from the order reversing the judgment of the Court of Appeals and reinstating the Wayne Circuit Court's September 10, 2004, order partially granting judgment notwithstanding the verdict and the February 23, 2005, order for final judgment and for sanctions. I would deny the application for leave to appeal, thereby leaving in place the Court of Appeals judgment reinstating the jury's award of $78,438 for expenses incurred by plaintiff for attendant-care services.

CAVANAGH, J., joins the statement of WEAVER, J.

KELLY, J., dissents and states as follows:

I concur in Justice Weaver's dissenting statement. I write separately to note that the no-fault insurer would be liable if attendant care were provided by a hired home-care agency. Family attendant care is a cheaper, more informal alternative to such hired care. The determinative question should be whether the attendant care was provided, not whether the care was provided with the same or similar level of formality. The majority does not conclude that the evidence was insufficient to establish that the attendant care here was provided. Because the care was provided, expenses were incurred—whether by the insured or by the insurer who is ultimately responsible to pay for attendant-care services.



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

March 7, 2008

_____
Clerk

p0304