CAVANAGH, J.
(dissenting). I dissent from the majority’s erroneous interpretation of the phrase “charges incurred” in MCL 500.3107(1)(a) and the resulting creation of evidentiary requirements that lack any basis in the statutory language. Likewise, I dissent from the majority’s misguided limitation on the scope of evidence that may be considered when determining whether a charge is “reasonable” under MCL 500.3107(1)(a).[1]
Although the rules of statutory interpretation are well established, a brief review is warranted, given the majority’s failure to adhere to these principles. This Court’s primary goal is to “discern and give effect to the intent of the Legislature.” Sun Valley Foods Co v Ward, 460 Mich 230, 236; 596 NW2d 119 (1999). “The words of a statute provide the most reliable evidence of its intent. ...” Id. (quotation marks and citation omitted). When the language of a statute is unambiguous, “the *280 Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.” Id. Accordingly, “[n]o further judicial construction is required or permitted.” Id.
I. “CHARGES INCURRED”
Under MCL 500.3107(1)(a), personal protection insurance (PIP) benefits include “allowable expenses.” The statute goes on to explain that an “allowable expense” consists of, among other things, “charges incurred” for certain qualifying products or services. From the words “charges incurred,” the majority mysteriously divines new evidentiary requirements that an insured must satisfy in order to obtain PIP benefits. Specifically, the majority determines that, in order to show that charges were incurred, an insured must establish (1) that the caregiver expected compensation for the services rendered, see ante at 267, and (2) that the caregiver’s expectation of payment arose “at the time [the caregiver] provided the services,” see ante at 271.[2] Neither of the majority’s newly created requirements are supported by the statutory language at issue.
A. CAREGIVER’S EXPECTATION OF COMPENSATION
I disagree with the majority’s conclusion that MCL 500.3107(l)(a) requires a showing that the caregiver expected compensation. Rather, I continue to believe that the caregiver’s expectation of payment is irrelevant because the obligation to pay “charges incurred” *281 under MCL 500.3107(1)(a) lies with the insurer rather than the insured. Burris v Allstate Ins Co, 480 Mich 1081, 1088-1089 (2008) (WEAVER, J., dissenting). I also disagree with the majority’s reliance on the definition of “incur” that was adopted in Proudfoot v State Farm Mut Ins Co, 469 Mich 476; 673 NW2d 739 (2003), because, as Justice WEAVER explained in her Burris dissent, Proudfoot's definition of “incur” was limited to the facts of that case, in which the plaintiff sought advance payment for future expenses. Burris, 480 Mich at 1088 (WEAVER, J., dissenting). Accordingly, in Proudfoot, no one had incurred an expense because no service had been provided, and an insurer “is not obligated to pay any amount except upon submission of evidence that services were actually rendered. . . .” Manley v Detroit Auto Inter-Ins Exch, 425 Mich 140, 159; 388 NW2d 216 (1986). In this case, however, plaintiff seeks benefits for past expenses resulting from services that have already been provided. Accordingly, as long as the services were actually rendered and reasonably necessary and the amount of the charges was reasonable, defendant, as the insurer, has incurred the charges because of its statutory obligation to provide PIP benefits under MCL 500.3107(1). Unlike the majority’s interpretation, Justice Weaver’s approach in Burris is consistent with the Legislature’s intent that the no-fault act be construed liberally in favor of the insured. Turner v Auto Club Ins Ass’n, 448 Mich 22, 28; 528 NW2d 681 (1995).
In addition, I disagree with the majority’s effort to further hamstring insureds’ ability to recover PIP benefits to which they are entitled by imposing burdensome and statutorily unsupported preferences for specific documentary evidence. See ante at 269-270 (stating that the “best way of proving” that a caregiver expected payment is a “formal bill” or “memorialized state *282 ment”).[3] To begin with, the majority’s determination that certain forms of evidence are always more persuasive than others is faulty because it is premised on the majority’s conclusion that the caregiver must expect compensation. However, even accepting arguendo that compensation must be expected in order for a charge to be incurred for purposes of MCL 500.3107(1)(a), nothing in the statutory language supports the majority’s gradation of the persuasiveness of various forms of evidence or the majority’s resulting preference for a formal bill or memorialized statement. Particularly telling is the majority’s failure to cite any authority in support of this preference for certain types of evidence. Indeed, the majority flatly admits that “no statutory provision requires” what the majority considers to be the “best” evidence. Ante at 270. Accordingly, although I agree that “itemized statements, bills, contracts, or logs listing the nature of services provided,” ante at 269, would be more than enough to establish entitlement to PIP benefits, simple testimony or any other form of admissible evidence should also be sufficient.[4] See, generally, MRE 402 (providing that “ [a]ll relevant evi *283 dence is admissible . . .”) and MRE 401 (defining “relevant evidence” as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence”).
Although the majority may be correct that certain types of evidence may be more persuasive under the specific circumstances of a particular case, by discussing the persuasiveness of various forms of evidence in absolutes, the majority invades the province of the fact-finder. See People v Wolfe, 440 Mich 508, 514; 489 NW2d 748 (1992) (“[A]ppellate courts are not juries, and . . . they must not interfere with the jury’s role[.]”). Indeed, this error in the majority’s approach is exposed in its discussion of the specific facts of this case, particularly the majority’s statement that failure to provide certain documents “implicates [the caregiver’s] credibility .. . .” Ante at 271. However, contrary to the majority’s willingness to weigh in on witness credibility, this Court has frequently stated that appellate courts
must remember that the jury is the sole judge of the facts. It is the function of the jury alone to listen to testimony, weigh the evidence and decide the questions of fact.... Juries, not appellate courts, see and hear witnesses and are in a much better position to decide the weight and credibility to be given to their testimony. [Wolfe, 440 Mich at 514-515 (quotation marks and citation omitted).]
In summary, I disagree with the majority’s conclusion that an insured must prove that a family caregiver expected compensation in order to prove that charges were incurred for purposes of MCL 500.3107(1)(a). In my view, the insurer incurs the charge by way of its *284 statutory obligation to provide PIP benefits under MCL 500.3107(1)(a) when the insured proves that the services were reasonably necessary and actually rendered and that the amount of the charge is reasonable. Furthermore, accepting arguendo the majority’s declaration that an insured must prove that his or her caregiver expected compensation, I disagree with the majority’s implication that certain forms of evidence will always be the “best way” to establish entitlement to PIP benefits. Not only does the majority admit that there is no statutory support for its conclusion, see ante at 269-270, the idea that an appellate court can determine the best evidence in a case has been consistently rejected as an improper invasion of the fact-finder’s role as “the sole judge of the facts.” Wolfe, 440 Mich at 514 (quotation marks and citation omitted; emphasis added).
B. TIMING OF EXPECTATION AND REQUEST FOR PAYMENT
The majority creates another unsupported and previously nonexistent requirement when it states that a caregiver must expect compensation “at the time the services were rendered.” Ante at 269-270; see, also, ante at 271 (stating that the “circuit court failed to make a finding regarding.. . whether Mrs. Douglas expected compensation or reimbursement at the time she provided the services”) (emphasis added). Again, the majority fails to identify any support for this new timing requirement in either the caselaw or the statutory language of MCL 500.3107(1)(a). The reason for the majority’s failure to do so is obvious: there simply is no support for the majority’s judicially created requirement. This is particularly notable given that members of the majority have often railed against extratextual requirements. See, e.g., People v Schaefer, 473 Mich *285 418, 432; 703 NW2d 774 (2005).[5] Indeed, in People v Wager, 460 Mich 118, 123-124; 594 NW2d 487 (1999), the majority opinion expressly overruled a previous Court of Appeals opinion that had inserted a “reasonable time” requirement into the statute at issue in that case, stating “[N]o sound reason exists to engraft the ‘reasonable time’ element onto the clear language of the statute.” Accordingly, I am at a loss about why the majority believes it is appropriate to engraft a time requirement onto MCL 500.3107(1)(a) despite the lack of any such requirement in the actual language of the statute.[6]
Although the lack of support in the statutory language is reason enough to reject the majority’s analysis, the practical implications of the majority’s burdensome *286 new requirement is also worth consideration. Specifically, by requiring that a family caregiver expect compensation, not only does the majority punish a family member who nobly acts to provide care to a loved one in a time of need, the majority also rewards the insurer, rather than the caregiver, for this act of kindness by allowing the insurer to avoid providing PIP benefits that it would otherwise be required to provide. This result is not only ethically troubling, but it also turns on its head the Legislature’s intent that the no-fault act be construed liberally in favor of the insured. Turner, 448 Mich at 28.
Additionally, by requiring that the caregiver expect compensation at the time the services are provided, the majority fails to recognize the reality of situations in which attendant-care services are needed. Specifically, claims for PIP benefits arise out of automobile-related accidents, which were typically sudden, unexpected events. Accordingly, family members may unexpectedly be called upon to immediately provide care to a loved one. Given the nature of most families, I believe that in the vast majority of situations, the family member would be willing to provide the care, at least initially, without any contemporaneous expectation of compensation from anyone. Thus, I believe that it may be fairly common that the caregiver is initially not even aware of the possibility of compensation and the process that must be completed in order to recover that compensation. Indeed, not every citizen is an attorney well versed in the intricacies of the no-fault act. As a result, at the time the services were provided, the caregiver would have no expectation that anyone will provide compensation. Yet under the majority’s analysis, if a family member did not expect compensation at the time the services were provided, despite the sudden and chaotic circumstances of the situation, he or she is not entitled *287 to retroactively expect compensation for services provided in the past after discovering that compensation is a realistic possibility. This approach rewards the insurer by allowing it to avoid providing PIP benefits that it would otherwise be obligated to provide under MCL 500.3107(1)(a) merely because the caregiver does not immediately demand compensation.[7]
II. DETERMINING WHAT IS A “REASONABLE CHARGE”
Under MCL 500.3107(1)(a), PIP benefits are payable for “allowable expenses” as long as the charge is “reasonable.”[8] In this case, the trial court, acting as the *288 fact-finder in a bench trial, heard testimony from two sources regarding the rate typically charged by an agency to provide the care that Katherine Douglas provided. Additionally, the trial court heard testimony that while Dr. Thomas Rosenbaum’s company employed Mrs. Douglas, she was paid at a rate of $10 an hour. Furthermore, the trial court heard testimony that Mrs. Douglas was unable to provide the hours of attendant care that plaintiffs doctor prescribed because she worked outside the home. After considering that testimony, the trial court awarded plaintiff PIP benefits at the rate of $40 an hour. In my view, agency rates are relevant to determining the proper rate of compensation for PIP benefits, and the trial court in this case properly considered the agency rates along with the other evidence submitted by the parties. Accordingly, I disagree with the majority that the trial court clearly erred in this case, and I would affirm the Court of Appeals on this issue.
Although the majority concludes that agency rates are both relevant and admissible in determining a “reasonable charge” under MCL 500.3107(1)(a), see ante at 276 n 79 (stating that “this case is not about the admissibility of the agency rates” because agency rates “may in fact be helpful to the fact-finder as a point of comparison in determining a reasonable charge for an individual’s provision of attendant care services”); and ante at 276 (stating that “an agency rate might bear some relation to an individual’s rate”), the majority nevertheless relies exclusively on the Court of Appeals’ opinion in Bonkowski v Allstate Ins Co, 281 Mich App 154, 165; 761 NW2d 784 (2008), which expressly stated *289 that agency rates are “not relevant.” I disagree with the majority’s reliance on Bonkowski for several reasons.
To begin with, Bonkowski readily admitted that its entire discussion of the rate of compensation was dictum, stating that issue was not “squarely before” the Court. Id. at 164. Moreover, without justification, Bonkowski admittedly ignored caselaw that found agency rates relevant to determining the proper rate of compensation for a family member’s provision of care. Id. (acknowledging that the Court of Appeals had “previously embraced the notion that ‘comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed [by family members]’ ”), quoting Manley v Detroit Auto Inter-Ins Exch, 127 Mich App 444, 455; 339 NW2d 205 (1983) (alteration in original). Further, Bonkowski cited no authority in support of its preferred approach to determining the proper rate of compensation for attendant care provided by unlicensed family members.
Most importantly, however, Bonkowski is poorly reasoned and, as a result, unpersuasive. Particularly unpersuasive is the notion that only the hourly rate paid to an attendant-care-services provider by an agency is relevant. Indeed, even the majority rejects this perspective. See ante at 276 n 79 (acknowledging that agency rates “may in fact be helpful to the fact-finder”).[9] Accordingly, the majority is unwise to rely on Bonkowski’s *290 analysis of this issue. Rather, I would adopt the reasoning from Judge GLEICHER’s majority opinion in Hardrick v Auto Club Ins Ass’n, 294 Mich App 651; 819 NW2d 28 (2011).
Hardrick, 294 Mich App at 678-679, first noted that the question whether expenses are reasonable is generally a question for the fact-finder, as this Court stated in Nasser, 435 Mich at 55. Second, Hardrick agreed with Bonkowski that “the rates charged by an agency to provide attendant-care services are not dispositive of the reasonable rate chargeable by a relative caregiver,” but the opinion also concluded that “this does not detract from the relevance of such evidence.” Hardrick, 294 Mich App at 666. Accordingly, I find persuasive Hardrick’s decision to review the issue through the lens of the admissibility of evidence. Hardrick explained that evidence is “relevant” and thus “material” when it helps prove a proposition that is a “material fact at issue.” Id. at 667-668. Because the “material fact at issue” is the reasonable rate for attendant-care services for an insured, and insurers routinely pay agency rates for attendant-care services, Hardrick concluded that agency rates are relevant to determining the proper compensation for relative caregivers. Hardrick emphasized that the issue “is not whether an agency rate is reasonable per se under the circumstances, but whether evidence of an agency rate may assist a jury in determining a reasonable charge for family-provided attendant-care services.” Id. at 669. Accordingly, because an agency rate commonly paid by insurers “ ‘throws some light, however faint,’ on the reasonableness of a charge for attendant-care services,” it is admissible. Id., citing Beaubien v Cicotte, 12 Mich 459, 484 (1864).
*291 Moreover, Hardrick explained that the fact-finder “may ultimately decide that an agency rate carries less weight than the rate charged by an independent contractor, or no weight at all. But the fact that different charges for the same service exist in the marketplace hardly renders one charge irrelevant as a matter of law.” Hardrick, 294 Mich App at 669. Indeed, the insurer would be free to introduce evidence showing the actual pay received by professional attendant-care-services providers and the overhead costs incurred by agencies that provide the care along with any other relevant evidence. In fact, in this case, defendant was permitted to counter plaintiffs evidence of the agency rate paid by Dr. Rosenbaum’s company by showing that Mrs. Douglas was paid $10 an hour and with testimony from both defendant’s medical expert and its claims adjuster. This is the critical error in the majority’s reasoning: it fails to recognize that evidence of agency rates is only one of the various types of evidence that the fact-finder may consider in determining what constitutes a “reasonable charge,” and the decision of which evidence is most relevant should be left to the fact-finder. Accordingly, I disagree with the majority’s decision to opine regarding the weight that the fact-finder should give agency rates relative to other types of evidence when determining what constitutes a “reasonable charge.” By doing so, the majority again forgets that “appellate courts are not juries, and ... they must not interfere with the jury’s role[.]” See Wolfe, 440 Mich at 514 (1992).
Indeed, by adopting Bonkowski's emphasis on an individual caregiver’s hourly rate, the majority’s approach ignores other relevant considerations. For example, the family member might be forced to abandon a more lucrative career or move a great distance in order to be able to provide long hours of care to a loved one over an extended period. Additionally, the majority’s *292 approach marginalizes the fact that a family member who provides attendant-care services may be left without an array of benefits that a professional attendant-care-services provider would ordinarily receive. For example, a professional attendant-care-services provider who is employed by an agency might receive health insurance benefits, vacation and sick leave, and retirement benefits, among other things. None of these benefits are represented in the professional attendant-care-services provider’s hourly wage.[10] Thus, by singularly focusing on the rate paid to an attendant-care-services professional in order to determine what is a “reasonable charge” for family-provided care under MCL 500.3107(1)(a), the majority fails to recognize the complexity of the inquiry at hand and reduces the determination to a purely economic decision when that is simply not the reality of the situation.
Furthermore, by implying that certain evidence is deserving of greater consideration when determining a “reasonable charge,” the majority risks making the possibility of family-provided attendant care unattainable for a large number of no-fault insureds because their family members simply cannot afford to suffer the financial ramifications of that decision. This result not only potentially places families in the unenviable position of being forced to institutionalize a family member in order to make a fair living, but it also runs counter to one of the goals of the no-fault act: to keep no-fault *293 insurance affordable. See Shavers v Attorney General, 402 Mich 554, 627-628; 267 NW2d 72 (1978). Specifically, if a family member cannot afford to provide attendant care at the lower rate that the majority opinion essentially mandates, the insured may be forced into an institution, which will potentially increase the cost of attendant care and, therefore, the amount of PIP benefits that insurers must pay.
Finally, although the majority is correct that this Court has not previously considered this exact issue, the Court of Appeals’ approach in Hardrick is more consistent with this Court’s opinion in Manley, 425 Mich at 154, which considered the “reasonable charge” aspect of MCL 500.3107(1)(a) and held that evidence of a daily charge by facilities for “room and board” is admissible to determine a parent’s costs for room and board of a disabled child in the parent-caregiver’s home. See, also, Manley, 425 Mich at 169 (BOYLE, J., concurring in part and dissenting in part) (stating that “comparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed by [a family member]”) (quotation marks and citation omitted). Thus, given this Court’s guidance on the issue in Manley, and because I believe that Hardrick’s analysis is more thorough and well reasoned than Bonkowski’s, I would adopt Hardrick’s analysis.
Applying Hardrick’s approach to this case, I would affirm the trial court’s conclusion that $40 an hour is a “reasonable charge.” The majority claims that the trial court’s finding is “unjustified on this record”; however, the majority fails to consider a variety of factors that were before the fact-finder in this case. Specifically, the trial court heard testimony from which it could conclude that *294 Mrs. Douglas would need to quit her job outside the home in order to provide plaintiff with the attendant care his doctor prescribed. Moreover, the trial court heard testimony regarding both the agency rate and individual rate of pay for the type of care that Mrs. Douglas was providing. Notably, defendant could have submitted additional evidence in support of its claim for a lower hourly rate, but it chose not to do so. Thus, while the majority is correct that it is “undisputed” that “Mrs. Douglas actually received $10 an hour in providing attendant care services to plaintiff,” ante at 277, it is also undisputed that agencies receive a higher rate of compensation for the same services, and it is also undisputed that Mrs. Douglas could not provide the attendant care that plaintiff needed while maintaining her employment outside the home. Thus, the rate paid to an individual caregiver fails to encompass all the ramifications of Mrs. Douglas’s provision of attendant care to plaintiff. Accordingly, because “[t]he trier of facts is permitted to draw natural inferences from all the evidence and testimony,” Kostamo v Marquette Iron Mining Co, 405 Mich 105, 120-121; 274 NW2d 411 (1979), I cannot agree with the majority’s conclusion that the trial court in this case “uncritically adopted” the agency rates or that agency rates were “the sole basis for the award of benefits in these circumstances.” Ante at 276-277. As a result, I am not “left with the definite and firm conviction that a mistake has been made,” Detroit v Ambassador Bridge Co, 481 Mich 29, 35; 748 NW2d 221 (2008) (quotation marks and citation omitted), and, thus, in my view, the trial court did not clearly err on this issue.
III. CONCLUSION
In summary, I dissent from the majority’s effort to extend the erroneous interpretation of MCL 500.3107 from Griffith. Specifically, I disagree with the majority’s *295 judicially created requirements regarding what is necessary to show that a charge was incurred because those requirements are unsupported by the statutory language at issue and, thus, contrary to the Legislature’s intent with regard to MCL 500.3107(1)(a). Moreover, the majority’s decision to rely, at least in part, on the reasoning from Bonkowski, 281 Mich App 154, is ill conceived because Bonkowski is poorly reasoned, particularly in comparison to the persuasive analysis in Hardrick, 294 Mich App 651. Furthermore, Bonkowski is contrary to this Court’s opinion in Manley, 425 Mich 140. Accordingly, I dissent.
Marilyn Kelly and Hathaway, JJ., concurred with Cavanagh, J.

 Additionally, I continue to believe that the interpretation of MCL 500.3105 and MCL 500.3107 from the majority opinion in Griffith v State Farm Mut Auto Ins Co, 472 Mich 521; 697 NW2d 895 (2005), which the majority applies in this case, is incorrect for the reasons provided in Justice Marilyn Kelly’s Griffith dissent. See id. at 542-554 (Marilyn Kelly, J., dissenting).

 Included within the majority’s conclusion that a caregiver must expect payment is an additional preference that documentation of the charges be provided in a “memorialized statement” because the majority considers such documentation to be the “best way of proving” entitlement to PIP benefits. Ante at 269-270. For the reasons discussed in part 1(A), I disagree.

 As the majority opinion states, a formal bill or memorialized statement is not the only method sufficient to show that an insured is entitled to PIP benefits. See ante at 270 (acknowledging that “a caregiver’s testimony can allow a fact-finder to conclude that expenses have been incurred”). Accordingly, despite the majority’s unsupported conclusion that documentary evidence is “best,” any form of admissible evidence could be equally sufficient to meet an insured’s burden to prove that services were actually rendered.

 The majority apparently interprets my dissent as asserting that when a family member provides care, the insured need not provide any evidence that attendant care was actually provided. See ante at 269 n 60. This is not an accurate characterization of my dissent, however, because I agree that an insurer “is not obligated to pay any amount except upon submission of evidence that services were actually rendered . ...” Manley, 425 Mich at 159. Rather, as I previously stated, I disagree with the majority’s unsupported preference for specific documentary evidence *283 because, in my view, any form of admissible evidence could be equally sufficient to meet an insured’s burden to prove that services were actually rendered.

 See, also, Johnson v Recca, 492 Mich 169, 196-197; 821 NW2d 520 (2012), stating that
it must be assumed that the language and organization of the statute better embody the “obvious intent” of the Legislature than does some broad characterization surmised or divined by judges.... It is not for this Court to “enhance” or to “improve upon” the work of the lawmakers where we believe this can he done, for it will always he easier for 7 judges on this Court to reach agreement on the merits of a law than 110 state representatives and 38 state senators representing highly diverse and disparate constituencies. Therefore, this Court must.. . rest its analysis on the language and organization of the statute.

 The majority also expresses its belief that an insured should submit evidence “to the insurer within a reasonable amount of time after the services were rendered,” ante at 270 (emphasis added). See, also, ante at 270 (discussing the “risk” of “fail[ing] to request reimbursement for allowable expenses in a timely fashion ....”) (emphasis added). However, the majority admits that “MCL 500.3107(1)(a) does not require a claim for allowable expenses to occur within any particular time.” Ante at 270 n 64. Thus, it is unclear to me why the majority chooses to create potential confusion by injecting the statutorily unsupported phrases “within a reasonable amount of time” and “in a timely fashion” into its application of MCL 500.3107(1)(a).

 The majority dismisses as unfounded my concerns regarding the practicalities of the majority’s new requirements, stating that “[cjontrary to the dissent’s suggestion, a family member’s determination to provide care even in the absence of an insurer’s payment is not inconsistent with expecting compensation from the insurer, but the expectation must nevertheless be present for a charge to be incurred within the meaning of MCL 500.3107(1)(a).” Ante at 268 n 56. However, this statement only addresses the source of the compensation, not the timing of when the caregiver developed the expectation of payment, regardless of the source. Under the circumstances that I discuss, the family caregiver does not expect compensation “at the time the services were rendered,” ante at 269-270, which is an express requirement of the majority’s erroneous interpretation of MCL 500.3107(1)(a). The majority claims that its requirement that compensation be expected at the time the services were provided “simply applies the dictionary definitions of the statutory phrase ‘charges incurred.’ ” Ante at 268 n 56. However, even accepting the dictionary definitions that the majority selects, there is clearly no time component to those definitions. See ante at 267 (defining “incur” as “[t]o become liable or subject to, [especially] because of one’s own actions,” and' “charge” as a “[pecuniary burden, cost” or “[a] price required or demanded for service rendered or goods supplied”) (quotation marks and citations omitted). Indeed, applying these definitions, it is clear that a person could “become liable” for “a price demanded for services” after the services are rendered.

 The majority incorrectly states that “the fact-finder must determine what is a reasonable charge for an individual’s provision of services ....” Ante at 276. Rather, the plain language of MCL 500.3107(1)(a) simply requires that the charge be “reasonable.” Accordingly, although what an *288 individual on the open market may be able to obtain as compensation is relevant, it is but one factor in a multifactor analysis to determine what is a “reasonable charge” under the circumstances of a particular case.

 The majority, however, also risks creating confusion when it states that the amount Mrs. Douglas was paid while employed by Dr. Rosenbaum “is highly probative of what constitutes a reasonable charge for her services” because “this figure is the rate she actually received for providing attendant care services .. ..” Ante at 277. This statement could be misinterpreted and lead lower courts to conclude that a professional caregiver’s hourly rate is the only relevant evidence. Thus, to clarify, I *290 agree with the majority that agency rates may be considered by the fact-finder in determining what constitutes a “reasonable charge” under MCL 500.3107(1)(a).

 I recognize that the majority briefly considers the issue of fringe benefits, see ante at 272 n 69, but the majority relegates the issue to a mere secondary consideration by repeatedly emphasizing that “Mrs. Douglas actually received $10 an hour in providing attendant care services to plaintiff,” ante at 277. See, also, ante at 277 (stating that the $10 an hour rate is “highly probative” of what is a reasonable charge under MCL 500.3107(l)(a) because it was “the rate [Mrs. Douglas] actually received for providing attendant care services”).