*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

HARBANS KAUR,

        Plaintiff-Appellee/Cross-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE
MIDWEST,

        Defendant/Third-Party Plaintiff-
        Appellant/Cross-Appellee,

and

MEEMIC INSURANCE COMPANY,

        Third-Party Defendant-Appellee.

UNPUBLISHED
December 18, 2025
2:43 PM

No. 365957
Wayne Circuit Court
LC No. 17-014352-NI

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant, Citizens Insurance Company of the Midwest (Citizens), appeals as of right the order entering judgment following a jury trial. Plaintiff cross-appeals the order granting attorney fees only for the period following January 23, 2018. Plaintiff also seeks a remand for consideration of appellate attorney fees. We affirm the judgment and the attorney-fee order, but remand to the trial court for consideration of appellate attorney fees.

## I. FACTS AND PROCEEDINGS

This appeal arises from a dispute between Citizens and Meemic Insurance Company regarding which of them is responsible for paying personal protection insurance (PIP) benefits for plaintiff under the no-fault automobile insurance act, MCL 500.3101 *et seq*. Plaintiff was allegedly struck by a vehicle while she was crossing a street in Canton on October 6, 2016. The accident

-1-

occurred during a period when plaintiff and her husband, Mohinder Singh, were residing in the home of their son, Jagdeep Singh, in Canton, who was insured by Meemic. Plaintiff and Mohinder were taking a walk in Jagdeep's neighborhood. Plaintiff crossed a street while Mohinder spoke with a neighbor. Mohinder heard a slapping or thumping sound. He turned and saw that plaintiff was on the ground in front of Kishore Yerukola's car. She was bleeding and crying out in pain. Her shoes came off her feet. Plaintiff has maintained throughout these proceedings that she was hit by the car, although she does not have a clear memory of what happened.

When Jagdeep submitted a claim on plaintiff's behalf to Citizens, which insured Yerukola, Citizens denied the claim on the ground that Meemic was the first insurer in the order of priority under MCL 500.3115 because plaintiff was a relative domiciled in Jagdeep's home. When Jagdeep submitted the claim to Meemic, Meemic initially paid benefits, but, upon further investigation, denied the claim on the ground that plaintiff was domiciled in Ontario. Citizens continued to deny benefits on the ground that plaintiff was domiciled in Canton. Citizens later asserted an additional reason to deny benefits, namely that plaintiff's injuries were not caused by the operation of a motor vehicle because she fell down on her own, without any contact with Yerukola's vehicle.

Plaintiff's domicile was in question because she and Mohinder maintained residences in both Canton and Ontario. Plaintiff and Mohinder originally lived in India with their sons, Jagdeep and Gurpreet Singh. In 1988, the family immigrated to Ontario. They became naturalized Canadian citizens. When Gurpreet established his independence, he bought a home first in Trenton, Ontario, and later in Niagara Falls, Ontario. In 1997, Jagdeep immigrated to the metropolitan Detroit area to further his career. He became a naturalized U.S. citizen. He lived in different parts of metropolitan Detroit, and eventually bought a house in Canton. In 2001, Mohinder retired, and he and plaintiff sold their home in Ontario. They then divided their time between Gurpreet's and Jagdeep's houses. Jagdeep sponsored them to obtain permanent residency visas in the U.S., which they obtained in 2009. They became eligible for Medicare benefits in 2016, but they continued to visit Canada frequently and long enough to retain Canadian healthcare insurance. They had a dedicated bedroom in each house and kept belongings in both houses. They received mail at both houses. They maintained bank accounts in both countries.

Plaintiff filed three different lawsuits in relation to the accident, the first against Meemic and Yerukola, the second against Meemic, and the third against Citizens. The first suit was dismissed, and is mostly irrelevant to this appeal. The second lawsuit was dismissed when the trial court granted Meemic's motion for summary disposition under MCR 2.116(C)(10), having found that there was no genuine issue of material fact that plaintiff's domicile was in Ontario. In the third lawsuit, which gave rise to the instant appeal, Citizens's motion to consolidate the case with the second lawsuit was dismissed on the same day that the trial court granted summary disposition for Meemic in the second suit. The trial court permitted Citizens to file a third-party claim against Meemic in the third suit.

Meemic moved for summary disposition on the ground that the summary disposition order in the second lawsuit precluded relitigation of the domicile issue under the doctrine of res judicata. The trial court granted the motion, but this Court reversed it because Citizens was not a party in the second lawsuit and was not in privity with any party. *Kaur v Citizens Ins Co of the Midwest*, unpublished per curiam opinion of the Court of Appeals, issued June 18, 2020 (Docket Nos.

346926 and 349344) (*Kaur I*). Meemic then moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of fact that plaintiff was domiciled in Ontario, leaving Citizens first in the order of priority. The trial court granted this motion. Plaintiff moved for partial summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that her injuries arose from the operation of a motor vehicle. The trial court also granted this motion. Citizens appealed these orders, and this Court reversed them on the ground that there were jury-triable factual questions related to both issues. *Kaur v Citizens Ins Co of the Midwest*, unpublished per curiam opinion of the Court of Appeals, issued April 21, 2022 (Docket No. 355683) (*Kaur II*).

The third lawsuit advanced to trial in November 2022. The jury found that plaintiff was domiciled in Ontario, placing Citizens first in the order of priority. The jury awarded plaintiff $1,354,757.92 in allowable expenses under the no-fault act. Citizens moved for judgment notwithstanding the verdict (JNOV) or for a new trial. The trial court denied the motion. Plaintiff moved for attorney fees under MCL 500.3148. The trial court determined that Citizens's failure to pay benefits did not become unreasonable until January 23, 2018, the date that the trial court in the second lawsuit granted Meemic's motion for summary disposition under MCR 2.116(C)(10). The trial court awarded attorney fees dating back to January 23, 2018.

## II. JNOV OR NEW TRIAL, INVOLVEMENT OF MOTOR VEHICLE

Citizens argues that the trial court erred by denying its motion for JNOV or a new trial on the issue of whether a vehicle caused plaintiff's accident. The trial court's decision regarding a motion for JNOV is reviewed de novo. *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 29; 930 NW2d 393 (2018). "This Court will view all legitimate inferences from the evidence in the light most favorable to the nonmoving party." *Id*. at 29-30 (quotation marks and citation omitted). "Only if the evidence so viewed fails to establish a claim as a matter of law is JNOV appropriate." *Id*. at 30 (quotation marks and citation omitted). A trial court's decision regarding a motion for a new trial is reviewed for an abuse of discretion. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). Related questions of law are reviewed de novo. *Id*. A trial court abuses its discretion when its decision falls "outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). This Court gives substantial deference to a court's determination that a verdict was not against the great weight of the evidence. *Guerrero v Smith*, 280 Mich App 647, 666; 761 NW2d 723 (2008). In reviewing a trial court's denial of a motion for JNOV or a new trial, this Court generally defers to the jury's findings as to witness credibility. See *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 617; 886 NW2d 135 (2016); *Guerrero*, 280 Mich App at 669.

Plaintiff argues that the law-of-the-case doctrine precludes us from considering this issue because we previously decided, in *Kaur II*, that the jury would determine the cause of the accident. "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *New Props, Inc v George D Newpower, Jr, Inc*, 282 Mich App 120, 132; 762 NW2d 178 (2009) (quotation marks and citation omitted). "[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same." *Id*. (quotation marks and citation omitted). Here, if the evidence of vehicle involvement was

different at trial than it was at the summary disposition phase, and if there was no evidence presented at trial to support a finding of vehicle involvement, Citizens could be entitled to JNOV. Moreover, "[w]hen this Court reverses a case and remands it for a trial because a material issue of fact exists, the law-of-the-case doctrine does not apply because the first appeal was not decided on the merits." *Brown v Drake-Willock Intern, Ltd*, 209 Mich App 136, 144; 530 NW2d 510 (1995). Thus, the law-of-the-case doctrine does not preclude Citizens from arguing on appeal that the evidence presented at trial was not sufficient to support the jury's verdict.

Under MCL 500.3105(1), an insurer "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," subject to the provisions of the no-fault act. This provision imposes two causation requirements for payment of PIP benefits. *Griffith ex rel Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). The phrase "for accidental injury" implies a causal connection; thus, "a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits are causally connected to the accidental bodily injury arising out of an automobile accident." *Id*. "Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries 'aris[e] out of' or are caused by 'the ownership, operation, maintenance or use of a motor vehicle . . . .' " *Id*., quoting MCL 500.3105(1).

There are two possible ways that a motor vehicle could have caused plaintiff's accident: either the vehicle made physical contact with her, knocking her off her feet and onto the ground; or plaintiff reasonably feared that the approaching vehicle would strike her, causing her to take evasive action that led to her fall. Citizens denied that evidence supported either possibility. With regard to direct contact between the vehicle and plaintiff, three physicians and an accident reconstruction specialist testified that plaintiff's hip fracture was consistent with being hit by a vehicle, and unlikely to be caused by a simple fall. Jennifer Yaek, Ph.D., who was not a medical doctor, was the only expert witness who concluded that plaintiff's injuries did not indicate that she was hit by a vehicle.

Citizens emphasizes that Yerukola was the only witness who saw plaintiff fall. Although Citizens states that Yerukola has consistently denied hitting plaintiff, Jagdeep testified that Yerukola apologized, and thus implicitly admitted responsibility. Lieutenant Joe Mullally testified that Yerukola said that he struck a pedestrian. Yerukola's actions in deleting his phone's search history just before his phone was forensically examined could be construed as consciousness of responsibility. Citizens also emphasizes that there was no visible damage on Yerukola's car, but a first responder, Frank Rehling, testified that it was not unusual for a low-impact collision with a pedestrian to leave no damage.

Finally, although Mohinder did not see the accident, he described hearing a slapping or thumping sound just before he looked at plaintiff and saw her on the ground. Although plaintiff did not remember exactly what happened, she stated, "I hit something," and "it felt like somebody hit me on top . . . ." Viewing this evidence in a light most favorable to plaintiff, and deferring to the jury's determination of witness credibility, the record reveals sufficient evidence to support the jury's verdict. *Hecht*, 499 Mich at 617; *Pugno*, 326 Mich App at 29.

### III.  JNOV OR NEW TRIAL, DOMICILE

As we concluded in the prior issue, the law-of-the-case doctrine does not preclude Citizens from arguing that the trial evidence was insufficient to support the jury's finding of domicile. Meemic also argues that the doctrine of judicial estoppel precludes Citizens from appealing the jury's findings. "Judicial estoppel is an equitable doctrine, which generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012) (quotation marks and citation omitted). Michigan has adopted the "prior success" model, in which "a party who has successfully and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." *Paschke v Retool Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994), quoting *Lichon v American Univ Ins Co*, 435 Mich 408, 416; 459 NW2d 288 (1990) (emphasis omitted).

According to Meemic, Citizens appealed an adverse summary disposition ruling, namely that there was no genuine issue of fact that plaintiff's domicile was in Ontario. Citizens argued in this Court that there was a genuine issue of fact regarding domicile. This Court agreed, concluding that Meemic was not entitled to summary disposition. Ultimately, it was a jury that decided the domicile issue in Meemic's favor. Meemic argues that Citizens got what it asked for, namely a jury trial, and is therefore estopped from now challenging the jury's verdict. However, Citizens's argument in *Kaur II* that there was a jury-triable question of fact regarding domicile at the summary disposition phase is not inconsistent with Citizens's argument that the evidence later presented at trial did not support the jury's verdict. Accordingly, judicial estoppel does not preclude Citizens from raising this issue on appeal.

"Except as provided in subsections (2), (3), and (5), a personal protection insurance policy . . . applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident." MCL 500.3114(1). Under this provision, a no-fault insurer is responsible for the payment of PIP benefits to a relative domiciled in the insured's home. *Mapp v Progressive Ins Co*, 346 Mich App 575, 586; 13 NW3d 643 (2023). At the time of the accident, MCL 500.3115[1] provided, in pertinent part:

> (1) Except as provided in [MCL 500.3114(1)], a person suffering accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits from insurers in the following order of priority:

> (a) Insurers of owners or registrants of motor vehicles involved in the accident.

---

[1] Effective June 11, 2019, MCL 500.3115 provides:

> Except as provided in section 3114(1), a person who suffers accidental bodily injury while not an occupant of a motor vehicle shall claim personal protection insurance benefits under the assigned claims plan under sections 3171 to 3175. [2019 PA 21.]

(b) Insurers of operators of motor vehicles involved in the accident.  [MCL 500.3115, as enacted by 1972 PA 294.]

Under this statutory scheme:

If a pedestrian injured in a motor vehicle accident does not have no-fault insurance and neither does a relative in that person's household, MCL 500.3114(1), then the person may claim PIP benefits from "[i]nsurers of owners or registrants of motor vehicles involved in the accident," MCL 500.3115(1)(a).  [*Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 552; 909 NW2d 495 (2017).]

"Domicile" has traditionally been defined as "the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning."  *Mapp*, 346 Mich App at 586-587 (quotation marks and citation omitted). A person may have only one domicile, although he or she may have more than one residence.  *Id*. at 587-588.  A domicile is acquired "by the combination of residence and the intention to reside in a given place . . . ."  *Id*. at 588, quoting *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 490; 835 NW2d 363 (2013).  " '[A] man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another.' "  *Grange*, 494 Mich at 494, quoting *In re High*, 2 Doug 515, 523-524 (Mich, 1847).

In *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 485; 274 NW2d 373 (1979), the plaintiff lived with her husband in a mobile home on property owned and occupied by her husband's parents.  However, at the time of the accident, the plaintiff was temporarily staying in her own mother's house.  *Id*.  The plaintiff and her husband did not own a vehicle.  *Id*. at 487.  The insurers with potential responsibility for the plaintiff's PIP benefits were the insurers who issued policies to: (1) the plaintiff's father-in-law (Community Services Insurance Company [Community Services]); (2) the plaintiff's mother (Wolverine Insurance Company [Wolverine]); and (3) the owner of the vehicle involved in the plaintiff's accident (Detroit Automobile Inter-Insurance Exchange [DAIIE]).  *Id*. at 488.  The trial court found that Community Services was the responsible insurer.  *Id*. at 489.  Our Supreme Court agreed that Community Services was responsible because the plaintiff was domiciled in the same household as her father-in-law.  *Id*. at 494.  After noting that it found no caselaw interpreting the language "domiciled in the same household," as used in MCL 500.3114(1), the Court looked to caselaw that addressed "the question of whether a person is a 'resident' of an insured's 'household' under particular insurance policies." *Workman*, 404 Mich at 495.  These cases were relevant because "the terms 'domicile' and 'residence' are legally synonymous (except in special circumstances)."  *Id*.  The Court extracted from the caselaw four factors pertinent to determining domicile:

(1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; . . . (2) the formality or informality of the relationship between the person and the members of the household; . . . (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises[;] . . . (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household . . . .  [*Id*. at 496-497.]

-6-

The Court ultimately concluded that it was "overwhelmingly clear" that the plaintiff was domiciled in her father-in-law's household. *Id*. at 497.

In *Grange*, 494 Mich at 481, our Supreme Court addressed the issue of determining a child's domicile in the context of determining priority between divorced parents' policies when the parents shared joint custody. The Court summarized the relevant principles:

> [A] person may have only one domicile, but more than one residence. For purposes of distinguishing "domicile" from "residence," this Court has explained that "domicile is acquired by the combination of residence and the intention to reside in a given place. . . . If the intention of permanently residing in a place exists, a residence in pursuance of that intention, however short, will establish a domicile." The traditional common-law inquiry into a person's "domicile," then, is generally a question of intent, but also considers all the facts and circumstances taken together. [*Id.* at 494-495 (citations omitted).]

The Court rejected the argument that a child of divorced parents could have two coexisting domiciles as well as two legal residences. *Id*. at 497. The Court clarified the statement in *Workman*, 404 Mich at 495, that "domicile" and "residence" are synonymous:

> This statement, however, when read in context of the entire opinion, does not stand for the proposition that domicile is the equivalent of residence under MCL 500.3114(1). Rather, *Workman* merely acknowledged that, generally, "residence" has sometimes been given the equivalent meaning of "domicile." *Workman* did not, however, establish that interpretation as an absolute rule. Indeed, this point is bolstered by the cases *Workman* cites in support of its statement that "the terms 'domicile' and 'residence' are legally synonymous." [*Grange*, 494 Mich at 498-499.]

The Court concluded that a custody order serves as conclusive evidence of a child's domicile. *Id*. at 511. In the context of divorce proceedings, "an already established domicile is not destroyed by a temporary absence when there is no intention to change domicile." *Kar v Nanda*, 291 Mich App 284, 290; 805 NW2d 609 (2011).

The most helpful principle is the statement in *Grange*, 494 Mich at 494, quoting *High*, 2 Doug at 523-524: "[A] man retains his domicile of origin [upon his birth] until he changes it, by acquiring another; and so each successive domicile continues, until changed by acquiring another." Citizens contends that plaintiff made the change to her domicile when she moved into Jagreep's home and stayed for the six-year minimum to obtain Medicare. Citizens argues that there was no evidence of plaintiff or Mohinder's intent to return to Ontario except to visit Gurpreet.

Both plaintiff and Mohinder gave testimony that was not totally conclusive. Plaintiff provided the Canton address when she answered interrogatories, but she testified that this answer was not correct. She and Mohinder bought a house in Canada and became naturalized Canadian citizens, but in 2009, they obtained permanent residency status in the United States. She was unable to travel to Canada after her accident in 2016 and all of 2017, but she later resumed the visits. She considered both of her sons' homes as places where she could stay permanently. She

had a primary care physician in Canton. She did not apply for U.S. citizenship. At the time of the accident she had been staying in Canton for four to five months (May 2016 to October 6, 2016). She spent most of her time in Canada before the accident. She replied affirmatively to the question of whether she intended to be Canadian. She referred to the Michigan home as her "second domicile," but stated that she planned to return to Canada. Mohinder testified that they spent five continuous years in the U.S., beginning in 2009, to establish eligibility for Medicare. They were in Ontario from October 2015 to April 2016. He gave unclear testimony regarding whether they lost Canadian medical insurance. He also agreed that he and plaintiff moved permanently to the U.S. in 2009.

A trier of fact could reasonably find from this testimony that plaintiff and Mohinder continued to maintain an Ontario domicile after they sold their home and began to move freely between their sons' homes. Although they made arrangements to facilitate their stay in the United States, including the acquisition of permanent residency status and eligibility for Medicare, they never committed to establishing a new domicile in Michigan. Plaintiff stated that she intended to remain domiciled in Ontario. It was up to the jury to decide whether this testimony was credible or whether the facts concerning her living arrangements proved instead that she changed her domicile to Ontario. The jury's verdict was therefore supported by evidence, and not contrary to the great weight of the evidence.

## IV. ASSIGNEES' CLAIMS

Citizens argues that the trial court erred by denying its motion for a directed verdict against United Pain Therapies and ZMC Pharmacy. These medical providers sued Citizens directly as plaintiff's assignees. Their claims were consolidated with plaintiff's third lawsuit, but their counsel did not appear for trial. Plaintiff's counsel stated that they authorized him to represent their interests.

The trial court's ruling on a motion for a directed verdict is reviewed de novo. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 550; 965 NW2d 121 (2020). "A directed verdict is only appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Id.* (quotation marks and citation omitted).

Before 2017, this Court held that medical providers had the right to directly sue no-fault insurers to recover their patients' PIP benefits. See, e.g., *Wyoming Chiropractic Health Clinic, PC v Auto-Owners Ins Co*, 308 Mich App 389, 395-396; 864 NW2d 598 (2014). In *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191, 218-219; 895 NW2d 490 (2017), our Supreme Court held that the no-fault act did not grant healthcare providers a cause of action to recover PIP benefits from a patient's insurer. The Court stated, however, that its holding "is not intended to alter an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id.* at 217 n 40. In 2019, the Legislature amended the no-fault act by enacting 2019 PA 21, which included a provision allowing a healthcare provider to assert a direct claim against the insurer. MCL 500.3112.

Plaintiff filed her complaint against Citizens on September 28, 2017, after the Supreme Court decided *Covenant Med Ctr* and before MCL 500.3112 went into effect. ZMC Pharmacy

and United Pain apparently opted to seek recovery as plaintiff's assignees. However, by the time of trial, they apparently declined to present their own proofs or represent their own interests. At all times between the filing of plaintiff's complaint and the trial, ZMC Pharmacy and United Pain had the right to rely on plaintiff to enforce her right to PIP benefits and to reimburse her providers when she received the benefits. Citizens's argument assumes that once ZMC Pharmacy and United Pain decided to pursue their own rights, they became restricted to recovering whatever payments they proved themselves. In other words, plaintiff, by assigning rights to the providers, relinquished her own right to receive benefits for the expenses she incurred to the providers. Citizens does not cite authority for this argument, but instead asserts the absence of authority contradicting it.

We acknowledge that Citizens's argument has some possible merit. However, the providers' right to compensation in the form of PIP benefits for the services they provided stems from plaintiff's right to PIP benefits to pay for those services. If the assignees were to make a second attempt to claim payment from Citizens, Citizens would have grounds for summary disposition under MCR 2.116(C)(7), because of payment or prior judgment. In any event, we need not decide whether Citizens is correct because the jury-verdict form did not require the jury to allocate its award among the providers of services. That is, the jury awarded plaintiff a lump-sum amount, and there are no other aspects of this case that would enable us to identify the necessary components of the jury verdict. As a result, we are unable to award Citizens relief on this issue because it is impossible for us to determine whether and to what extent, if at all, the jury awarded plaintiff PIP benefits for ZMC Pharmacy and United Pain. See *Frohman v City of Detroit*, 181 Mich App 400, 416; 450 NW2d 59 (1989).

## V. ATTENDANT CARE

Citizens argues that plaintiff failed to prove that she incurred attendant care expenses to her family. MCL 500.3107(1)(a) defines "allowable expenses" as "reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." These allowable expenses include attendant care. See *Douglas v Allstate Ins Co*, 492 Mich 241, 263-264; 821 NW2d 472 (2012). To recover "allowable expenses" under MCL 500.3107(1), "a plaintiff bears the burden of proving that (1) the charge for the service performed was reasonable, (2) the expense was reasonably necessary and (3) the expense was incurred." *Williams v AAA Mich*, 250 Mich App 249, 258; 646 NW2d 476 (2002). Our Supreme Court stated in *Douglas*:

> As we explained in *Griffith v State Farm Mutual Automobile Insurance Co*, "expenses for 'recovery' or 'rehabilitation' are costs expended in order to bring an insured to a condition of health or ability sufficient to resume his preinjury life," while expenses for "care" "may not restore a person to his preinjury state." While the dictionary definition of "care" "can be broadly construed to encompass *anything* that is reasonably necessary to the provision of a person's protection or charge," because MCL 500.3107(1)(a) "specifically limits compensation to charges for products or services that are reasonably necessary for an *injured person's* care, recovery, or rehabilitation[,] . . . [t]his context suggests that 'care' must be related to the insured's injuries." [*Douglas*, 492 Mich at 259-260 (footnotes omitted).]

Services that an injured person's family members perform can be allowable expenses under MCL 500.3107. Attendant care services include tasks such as bathing, dressing, and escorting a disabled person. *Id*. at 261. Family members can be compensated for these services because the no-fault act "places no limitation on *who* may perform what is otherwise an allowable expense." *Id*.

To be compensable, the expenses must be reasonably necessary under an objective standard. *Id*. at 264-265. In addition, the expenses must be "incurred" within the meaning of MCL 500.3107(1)(a). *Id*. at 266-267. "[T]he statutory requirement that 'charges' be 'incurred' requires some degree of liability that exists as a result of the insured's actually having received the underlying goods or services." *Id*. at 267. The Court stated:

> This Court has defined "incur" as it appears in MCL 500.3107(1)(a) as " '[t]o become liable or subject to, [especially] because of one's own actions.' " Similarly, a "charge" is a "[p]ecuniary burden, cost" or "[a] price required or demanded for service rendered or goods supplied." Thus, the statutory requirement that "charges" be "incurred" requires some degree of liability that exists as a result of the insured's actually having received the underlying goods or services. Put differently, because a charge is something "required or demanded," the caregiver must have an expectation that she be compensated because there is no "charge[ ] incurred" when a good or service is provided with *no* expectation of compensation from the insurer. Accordingly, this Court noted in *Burris v Allstate Insurance Co*, [480 Mich 1081 (2008),] that caregivers must have "expected compensation for their services." Without the expectation of compensation, "the evidence fail[s] to establish that the plaintiff 'incurred' attendant-care expenses." [*Douglas*, 492 Mich at 267-268 (footnotes omitted).]

The statute as it existed at the time of the accident made no distinctions between commercial providers of caregiving services and family members who care for the injured person. *Id*. at 268-269.[2] "[E]ven in the absence of a formal bill or contract, there must be some evidence that the family member expected compensation for providing services and of the actual services rendered." *Id*. at 268 n 56. "[T]here must be some basis for a fact-finder to conclude that the caregiver had *some* expectation of compensation from the insurer, even if the expectation of compensation was not the primary motivation for providing the care." *Id*. "[A] family member's determination to provide care even in the absence of an insurer's payment is not inconsistent with expecting compensation from the insurer, but the expectation must nevertheless be present for a charge to be incurred within the meaning of MCL 500.3107(1)(a)." *Id*.

"*Any* insured who incurs charges for services must present proof of those charges in order to establish, by a preponderance of evidence, that he is entitled to PIP benefits." *Id*. at 269. The Court stated that the "evidentiary requirement is most easily satisfied when an insured or a

---

[2] After the accident occurred in this case, the no-fault act was amended to place limitations on benefits paid for attendant care provided by family members. See MCL 500.3157, as amended by 2019 PA 21. However, Citizens does not argue that this amendment applies here.

caregiver submits itemized statements, bills, contracts, or logs listing the nature of services provided with sufficient detail for the insurer to determine whether they are compensable." *Id*. A log is not required by statute, and "a caregiver's testimony can allow a fact-finder to conclude that expenses have been incurred . . . ." *Id*. at 270. However, the lack of contemporaneous documentation may implicate a caregiver's credibility with respect to "whether the services were actually rendered in the manner documented." *Id*. at 271. In *Douglas*, the Court found that the trial court erred in issuing a judgment in favor of the plaintiff "without finding that the expenses were *actually incurred* given that its determination of the number of hours to award plaintiff had no discernible basis in the evidence presented at trial," and in failing to ascertain whether the caregiver had the expectation of payment for her services. *Id*. at 272. The trial court found that the caregiver provided 40 hours of care every week for the period in question, based on the physician's prescription for attendant care, but without finding that the caregiver actually provided 40 hours of care every week. *Id*. The Court therefore vacated the award of attendant care benefits. *Id*. at 274.

We are not persuaded that plaintiff's caregivers admitted that they had no expectation of payment. Jagdeep testified, "I don't care about the money." He stated, "Money is not the thing here, it's our lives that have been disturbed . . . ." Providing constant care for plaintiff for six or seven years exhausted his family and disrupted their lives. A jury could find from this testimony that there was an expectation of compensation, even if Jagdeep acknowledged that money was not the motivating factor in the services, and even if Jagdeep was more concerned about compensation for the family's disrupted lives than compensation for services. Jagdeep also testified that someone was always present with plaintiff, even when she read by herself in her bedroom. Plaintiff's case manager, Sheila Atkinson, agreed that plaintiff needed, and received, constant care. Willingness to provide care without compensation does not defeat a claim for attendant care expenses as long as there was expectation of payment. *Id.* at 268 n 56. The jury therefore had sufficient evidence to find that plaintiff needed attendant services, and that she incurred expenses because her family had an expectation of compensation.

## VI. EXCLUSION OF MEEMIC LETTER

Citizens argues that the court erred by excluding from evidence correspondence from Meemic indicating that it would deny benefits because Yerukola testified in his deposition that his vehicle did not strike plaintiff. To preserve an issue that the trial court erred in excluding evidence, the proponent of the evidence must make an offer of proof by stating the substance of the evidence. MRE 103(a)(2);[3] *Hashem v Les Stanford Oldsmobile, Inc*, 266 Mich App 61, 94; 697 NW2d 558 (2005). At trial, Citizens argued that questioning Meemic's claims adjuster, Dawn Hreben, about the letter would disprove plaintiff's allegation that Citizens was the only insurer who denied that plaintiff's injuries arose from operation of a motor vehicle. However, Citizens did not introduce the letter as an exhibit, but instead planned to use it to introduce its contents through Hreben's testimony. This differs from Citizens's assertion in its appellate brief that the trial court erred in excluding the letter from evidence. To the extent that Citizens argues that the trial court erred in

---

[3] The Michigan Rules of Evidence cited and quoted in this opinion are from the rules in effect at the time of trial.

denying admission of the letter, its argument is not preserved. See MRE 103(a)(2). Nonetheless, we will address the merits to the extent reasonably possible on the record before us.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Kuebler v Kuebler*, 346 Mich App 633, 653; 13 NW3d 339 (2023). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *In re Piland*, 336 Mich App 713, 733; 972 NW2d 269 (2021). Questions of law underlying evidentiary rulings, including the interpretation and application of statutes and court rules, are reviewed de novo. *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016). "In civil cases, evidentiary error is considered harmless unless declining to grant a new trial, set aside a verdict, or vacate, modify, or otherwise disturb a judgment or order appears to the court inconsistent with substantial justice." *Campbell v Human Servs Dep't*, 286 Mich App 230, 246; 780 NW2d 586 (2009) (quotation marks and citation omitted).

Citizens argues on appeal that the letter should have been admitted because it was relevant to plaintiff's claim that Meemic never questioned the involvement of a motor vehicle. However, the manner in which Citizens attempted to introduce the letter did not give the court an opportunity to rule on its relevance. The trial court restricted Citizens to asking Hreben whether she knew about the contents of the letter. Thus, the trial court excluded the question on grounds of privileged communication and lack of personal knowledge. Meemic also raised hearsay as grounds for objection. On appeal, Citizens does not address any of these grounds.

MRE 602 provides, in part, that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." However relevant or unprivileged the contents of the letter might have been, Hreben did not have personal knowledge of it. Hreben knew only that Meemic suspended plaintiff's benefits based on domicile. Accordingly, the trial court properly precluded Citizens from introducing the contents of the letter via Hreben's testimony. Additionally, Citizens could have called a Meemic witness who had personal knowledge that Meemic adopted lack of vehicle involvement as a second basis to deny plaintiff's claim. Citizens instead attempted to introduce this information through Hreben. Under these circumstances, Citizens fails to demonstrate that relief is warranted. See MRE 103(e).

## VII. EVIDENTIARY ERROR

Citizens asserts two unpreserved claims of improperly admitted evidence. See MRE 103(a)(2). As with the prior issue, we will address the merits to the extent reasonably possible on the record before us.

First, Lieutenant Mullally testified that he issued a "hazardous action or failed to yield" citation to Yerukola, and that he would have issued a traffic ticket if the incident had occurred on a public street. He also stated that he completed the UD-10 form, which is only issued when a vehicle makes contact with a pedestrian. Citizens argues that although it did not preserve this claim of error, this testimony was sufficiently prejudicial to constitute error requiring reversal. In an automobile negligence case, *Kirby v Larson*, 400 Mich 585, 599; 256 NW2d 400 (1977), overruled on other grounds *Placek v Sterling Hts*, 405 Mich 638; 275 NW2d 511 (1979), our Supreme Court held that evidence of an officer's decision to issue or to not issue a traffic ticket may be unduly influential on the jury because an officer's assessment of the party's responsibility

"would be before the jury as clearly as if [the officer] had stated such opinion in so many words." (Quotation marks and citation omitted.) The Court concluded, "[T]he rule today is that evidence of the issuance of a ticket may not be admitted." *Kirby*, 400 Mich at 599. Lieutenant Mullally's testimony revealed his opinion that Yerukola's vehicle struck plaintiff. If Citizens had objected, the trial court would have erred in overruling the objection. However, the jury was aware that no witness saw the car strike plaintiff. Lieutenant Mullally and Jagdeep testified that Yerukola orally admitted fault, while Yerukola denied contact between plaintiff and his vehicle. The totality of the evidence did not create the impression that Lieutenant Mullally's opinion was the final word on what had happened. Under these circumstances, a new trial is not warranted.

Second, during cross-examination of Loretta Pace, plaintiff's counsel referred to Dr. Collin O'Keefe's opinion that plaintiff was struck by a vehicle. Plaintiff originally intended to play Dr. O'Keefe's video deposition as part of her proofs, but later decided to omit it. Citizens argues that the question was improper because its probative value was outweighed by the danger of unfair prejudice.

Evidence is relevant "if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence." MRE 401. Generally, relevant evidence is admissible, except as otherwise provided by law, but evidence that is not relevant is not admissible. MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

We are not persuaded that the question about Dr. O'Keefe's deposition would provide grounds for reversal even if this error had been preserved. The balance between probative value and unfair prejudice is a matter of the trial court's discretion, see *Piland*, 336 Mich App at 733-734, and Citizens has not meaningfully explained why any risk of unfair prejudice from this question so substantially outweighed its probative value that MRE 403 required its exclusion. Additionally, the mention of Dr. O'Keefe's opinion, even if improper, was harmless, particularly given that it was both very brief and cumulative of properly admitted evidence. See *Campbell*, 286 Mich App at 246. The jury heard the opinions of other expert witnesses who believed that plaintiff's injuries must have resulted from being hit by a car rather than from spontaneously falling. Under these circumstances, Citizens fails to demonstrate that the testimony requires a new trial.

## VIII. ATTORNEY MISCONDUCT

Citizens argues that its right to a fair trial was violated by the unpreserved evidentiary errors related to Dr. O'Keefe's opinion and Lieutenant Mullally's hazardous action finding, and also by statements plaintiff's counsel made during opening argument. "To preserve an issue, the party asserting error must demonstrate that the issue was raised in the trial court." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023). Citizens failed to object to counsel's statement. "However, this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 290 (quotation marks and citation

-13-

omitted). Additionally, when a party asserts an unpreserved claim of attorney misconduct, this Court "must decide whether a new trial should nevertheless be ordered because what occurred may have caused the result or played too large a part and may have denied a party a fair trial." *Guerrero*, 280 Mich App at 651, quoting *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 103; 330 NW2d 638 (1982). "Tainted verdicts need not be allowed to stand simply because a lawyer or judge or both failed to protect the interests of the prejudiced party by timely action." *Guerrero*, 280 Mich App at 651-652, quoting *Reetz*, 416 Mich at 103. "Claims of attorney misconduct are subject to harmless-error review." *Estate of Carlsen v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 697; 980 NW2d 785 (2021).

Citizens argues that plaintiff engaged in misconduct by repeatedly stating in opening argument that Citizens fabricated the excuse that plaintiff's injuries were not caused by a vehicle.

"[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW22d 402 (2003). It is improper for a party to appeal to the sympathy of the jury during an opening statement, or to denigrate the other party. See *Rogers v Detroit*, 457 Mich 125, 147-149; 579 NW2d 840 (1998), overruled on other grounds by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). However, an attorney is permitted to argue or suggest that a witness may not be being truthful when witness credibility is a pertinent issue in the case. *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25-26; 837 NW2d 686 (2013). "An attorney's comments do not normally constitute grounds for reversal unless they reflect a deliberate attempt to deprive the opposing party of a fair and impartial proceeding." *Id*. at 21. "Reversal is required only where the prejudicial statements reveal a deliberate attempt to inflame or otherwise prejudice the jury, or to deflect the jury's attention from the issues involved." *Id*. (quotation marks and citation omitted).

Plaintiff's position at trial was that Citizens unjustifiably contrived its theory that plaintiff simply fell without being struck by Yerukola's vehicle. Counsel's use of the phrase "made up" may not have been the most polite language to describe Citizens's assertion of this defense, but neither was it inflammatory. Plaintiff provided substantial evidence in support of her allegation that she was struck by the vehicle. Citizens argues that the trial court's evidentiary errors, combined with the allegedly improper argument, deprived it of a fair trial, but the evidentiary claims are without merit. Citizens is therefore not entitled to a new trial on grounds of attorney misconduct.

## IX. PLAINTIFF'S CROSS-APPEAL

### A. ATTORNEY FEES

Plaintiff argues that the trial court erred by limiting its award of attorney fees to the period following the January 23, 2018 order of summary disposition in Meemic's favor. The trial court's decision on a motion for attorney fees under MCL 500.3148(1) "involves a mixed question of law and fact." *Ross v Auto Club Group*, 481 Mich 1, 7; 748 NW2d 552 (2008). "What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact." *Id*.

Under the no-fault act, PIP benefits "are payable as loss accrues." MCL 500.3142(1). PIP benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). MCL 500.3148(1) provides:

> Subject to subsections (4) and (5), an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. An attorney advising or representing an injured person concerning a claim for payment of personal protection insurance benefits from an insurer shall not claim, file, or serve a lien for payment of a fee or fees until both of the following apply:

> (a) A payment for the claim is authorized under this chapter.

> (b) A payment for the claim is overdue under this chapter.

"Under these statutes, personal protection benefits become 'overdue' when an insurer fails to pay 'within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained.' " *Moore v Secura Ins*, 482 Mich 507, 510-511; 759 NW2d 833 (2008), quoting MCL 500.3142(2). "The purpose of the no-fault act's attorney-fee penalty provision is to ensure prompt payment to the insured." *Ross*, 481 Mich at 11. "Accordingly, an insurer's refusal or delay places a burden on the insurer to justify its refusal or delay." *Id*. "The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id*. "Where a reasonable dispute exists as to coverage or the amount of benefits owing, the insurer is allowed to contest the claim under the act without penalty." *Lewis v Aetna Cas & Sur Co*, 109 Mich App 136, 139; 311 NW2d 317 (1981). "A refusal or delay in payment will not be found unreasonable within the meaning of § 3148(1) where the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or a bona fide factual uncertainty." *McCarthy v Auto Club Ins Ass'n*, 208 Mich App 97, 103; 527 NW2d 524 (1994).

Our Supreme Court stated in *Moore*, 482 Mich at 517:

> MCL 500.3148(1) establishes two prerequisites for the award of attorney fees. First, the benefits must be overdue, meaning "not paid within 30 days after [the] insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). Second, in postjudgment proceedings, the trial court must find that the insurer "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). Therefore, assigning the words in MCL 500.3142 and MCL 500.3148 their common and ordinary meaning, "attorney fees are payable only on overdue benefits for which the insurer has unreasonably refused to pay or unreasonably delayed in paying." *Proudfoot v State Farm Mut Ins Co*, 469 Mich 476, 485; 673 NW2d 739 (2003) (emphasis omitted).

"If a claimant establishes the first prerequisite, a rebuttable presumption arises regarding the second." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012). When the presumption is established, "the insurer bears the burden of showing that the withholding was based on a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 720; 922 NW2d 662 (2018) (quotation marks and citation omitted). The determinative factor "is not whether the insurer ultimately is held responsible for benefits, but whether its initial refusal to pay was unreasonable." *Moore*, 482 Mich at 522. "To determine whether the initial refusal to pay was unreasonable, the trial court must give effect to the unambiguous language of MCL 500.3148(1)," which "requires that the trial court engage in a fact-specific inquiry to determine whether 'the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.' " *Id*., quoting MCL 500.3148(1). "[A]n insurer's initial refusal to pay benefits under Michigan's no-fault insurance statutes can be deemed reasonable even though it is later determined that the insurer was required to pay those benefits." *Moore*, 482 Mich at 525.

When there is a question regarding which potential insurer has statutory priority under the no-fault act to pay benefits, "MCL 500.3114 puts the onus on a claimant to 'claim' PIP benefits" from an insurer "based on the statutory priority scheme." *Griffin v Trumbull Ins Co*, 509 Mich 484, 500; 983 NW2d 760 (2022). "[T]his implies that a claimant must be diligent in the pursuit of his or her claim for PIP benefits," and that the claimant must also make "a good-faith effort to fulfill a legal obligation or requirement that could ordinarily be expected of a person under the factual circumstances." *Id*. In *Griffin*, our Supreme Court affirmed this Court's "general rule" that "a dispute regarding which of multiple insurers is legally obligated to pay a valid PIP benefits claim generally does not excuse delaying payment." *Id*. at 502. Our Supreme Court stated in *Griffin*, 509 Mich at 502, "When the wrong insurer pays, the Legislature has provided statutory rights for recoupment of payments, see, e.g., MCL 500.3114(6), and we have recognized an insurer's right to sue for equitable subrogation." "The statutory scheme adopted by the Legislature thus strongly incentivizes insurers to pay first and seek reimbursement later when it is clear that a claimant will be entitled to PIP benefits from someone, and it penalizes unreasonable payment delays." *Id*. at 502-503.

Plaintiff argues that Citizens's choice to deny benefits based on domicile was unreasonable because Citizens failed to reasonably investigate whether plaintiff intended to quit her domicile in Ontario in favor of Michigan. Although Citizens decided this issue after brief contact with Jagdeep, the decision was not unreasonable because plaintiff's domicile was, in fact, a close question. It was not unreasonable for Citizens to decide that plaintiff's domicile was in Michigan, where she had been living with a permanent residency visa long enough to qualify for Medicare. Accordingly, plaintiff is not entitled to relief on this ground.

Citizens also argues that its decision to continue denying benefits after the January 23, 2018 order cannot be deemed unreasonable because in *Kaur II* this Court held that there were jury-triable issues of fact regarding plaintiff's domicile. Citizens thus seeks reversal of the trial court's order of attorney fees, not merely affirmance of the order limiting plaintiff's recovery to the period following the court's summary disposition order. An appellee, or in this case, a cross-appellee, may argue that this Court should affirm a trial court's decision for a reason other than the reason it made the decision. *In re Estate of Herbach*, 230 Mich App 276, 284; 583 NW2d 541 (1998). However, a cross-appeal "is necessary to obtain a decision more favorable than that rendered by

-16-

the lower tribunal . . . ." *Id.* By arguing in its response to plaintiff's cross-appeal that this Court should reverse the trial court's order granting attorney fees, Citizens is in essentially the same position as an appellee who argues that this Court should grant a more favorable decision than received in the trial court. We therefore decline to consider Citizens's argument because it was not raised in Citizens's original appeal, or in a cross-appeal to plaintiff's cross-appeal.

## B. APPELLATE ATTORNEY FEES

Plaintiff also requests a remand for determination of appellate attorney fees. Appellate attorney fees are available to a plaintiff under MCL 500.3148(1) because "the award of attorney fees is not limited to services rendered at the trial court level." *Bloemsma v Auto Club Ins Ass'n*, 190 Mich App 686, 691; 476 NW2d 487 (1991). Consistently with MCL 500.3148(1), the appellate attorney fees must be incurred from "advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue." We infer that appellate attorney fees may be awarded if the insurer unreasonably delays payment pending appeal.

Here, Citizens's appeal challenges the sufficiency of the evidence supporting plaintiff's positions on domicile and involvement of a motor vehicle, and supporting plaintiff's claim for attendant care. "When a party challenges a jury's verdict as against the great weight of the evidence, this Court must give substantial deference to the judgment of the trier of fact." *Allard v State Farm Ins Co*, 271 Mich App 394, 406; 722 NW2d 268 (2006). Citizens's remaining issues were unpreserved issues challenging the trial court's exercise of discretion in the admission of evidence and monitoring of counsel's conduct. While such issues are not futile, they impose a significant burden on the appellant. Under these circumstances, we find that if Citizens delayed paying benefits through the pendency of this appeal, the trial court may award appellate attorney fees. We therefore remand this case to the trial court to allow plaintiff the opportunity to move for an award of appellate attorney fees.

## X. CONCLUSION

We affirm the trial court in all respects, and remand to the trial court for consideration of appellate fees. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

-17-